USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:__3/26/2025__

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

**In re NURTURE BABY FOOD LITIGATION**

This document relates to:

ALL ACTIONS

---

1:21-cv-01217-MKV

### OPINION AND ORDER DENYING IN PART AND GRANTING IN PART MOTION TO DISMISS CONSOLIDATED CLASS ACTION COMPLAINT

MARY KAY VYSKOCIL, United States District Judge:

This case is one in a series of cases initiated in federal court by parent consumers after a congressional report reported the presence of heavy metals in the products of several large baby food manufacturers.  Plaintiffs bring this consolidated case individually and on behalf of all others similarly situated alleging that Defendant Nurture LLC (f/k/a Nurture Inc.) failed to properly disclose the presence of heavy metals and other contaminants in its baby food, in violation of consumer protection statutes and the common law in the states in which Plaintiffs reside.  Defendant moves to dismiss the case for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, and for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6).  For the following reasons, the motion to dismiss is DENIED in part and GRANTED in part as set forth herein.

### BACKGROUND[1]

Defendant manufactures and sells baby food products under the brand name Happy Family Organics, including products for infants and toddlers marketed as Happy Baby Organics and Happy Tot Organics (together, the "Baby Foods").  FAC ¶¶ 12, 65.  On its website, Defendant describes its products as made from "high-quality organic ingredients" and meeting "rigorous and

---

[1] The Court draws the facts recited in this Opinion from the Amended Consolidated Class Action Complaint [ECF No. 214 ("FAC")], the well-pleaded facts of which are accepted as true for purposes of resolving this motion.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).

uncompromising quality standards." FAC ¶ 13. Defendant states that its products are "[a]lways certified USDA Organic," "Non-GMO," made from "[i]ngredients grown without the use of toxic persistent pesticides," and use "[p]ackaging made without BPA, BPS, or phthalates." FAC ¶ 13; *see* FAC ¶ 78. Defendant's packaging reiterates these assurances, stating that the Baby Foods are "organic," "gluten free," and made with "non-GMO" ingredients. FAC ¶¶ 14–15.

## I.    The Congressional Report

In February 2021, the Subcommittee on Economic and Consumer Policy (the "Subcommittee") of the Committee on Oversight and Reform of the United States House of Representatives issued a report titled *Baby Foods Are Tainted with Dangerous Levels of Arsenic, Lead, Cadmium, and Mercury*.[2] *See* Staff of Subcommittee On Econ. and Consumer Pol'y, 117th Cong., *Baby Foods Are Tainted with Dangerous Levels of Arsenic, Lead, Cadmium, and Mercury* (Feb. 4, 2021) (the "Congressional Report"); FAC ¶ 2. The Congressional Report was the result of an investigation into the seven largest baby food manufacturers in the United States, including Defendant. FAC ¶ 2. The Congressional Report found the presence of "significant levels" of heavy metals in commercial baby food products, including the Baby Foods. FAC ¶ 85; Congressional Report 2. As to Defendant's Baby Foods, specifically, the Congressional Report found the following:

*Arsenic*:  Defendant's Baby Foods "contained as much as 180 parts per billion (ppb) inorganic arsenic." Congressional Report 3; FAC ¶ 86(a). Further, "[o]ver 25% of the products [Defendant] tested before sale contained over 100 ppb inorganic arsenic." Congressional Report

---

[2] The Court takes judicial notice of the Congressional Report and other reports and articles cited and quoted in the FAC, which are incorporated therein by reference, and/or which Plaintiffs knew about and relied upon in bringing this action. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002). The Court takes judicial notice of these documents "only to determine what the documents stated," and "not to prove the truth of their contents." *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991).

3; FAC ¶ 86(a).  Defendant's "testing shows that the typical baby food product it sold contained 60 ppb inorganic arsenic."  Congressional Report 3; FAC ¶ 86(a).  Although the Food and Drug Administration ("FDA") has finalized a standard regarding the presence of arsenic in baby foods— "100 ppb inorganic arsenic in infant rice cereal"—Defendant "has ignored it, setting its internal standard for that product at 115 ppb."  Congressional Report 33; FAC ¶ 89.

*Lead*:  Defendant's Baby Foods "tested as high as 641 ppb lead," and "[a]lmost 20% of the finished" Baby Foods that Defendant tested "contained over 10 ppb lead."  Congressional Report 3; FAC ¶ 86(b).

*Cadmium*:  Sixty-five percent of Defendant's Baby Foods "contained more than 5 ppb cadmium."  Congressional Report 4; FAC ¶ 86(c).

*Mercury*:  Defendant sold Baby Foods "containing as much as 10 ppb mercury." Congressional Report 4; FAC ¶ 86(d).[3]

The Congressional Report further found that although Nurture tested for the presence of heavy metals in the Baby Foods, Defendant "sold all products tested, regardless of how much toxic heavy metal the baby food contained."  Congressional Report 4; FAC ¶¶ 87, 93.  "By company policy, [Nurture's] toxic heavy metal testing is not intended for consumer safety."  Congressional Report 4.  Rather, Defendant describes its internal standards as "goal thresholds" that "are not used to make product disposition decisions and are not a pre-condition to product release," but rather "monitor[] the supply chain."  Congressional Report 33; FAC ¶ 90.  Because all of Defendant's products are sold regardless of testing results, Nurture "released products containing as much as 641 ppb lead and 180 ppb inorganic arsenic."  Congressional Report 34; FAC ¶ 91.  The

---

[3] Relying on a report published by private organization Healthy Babies Bright Futures, Plaintiffs also allege that the Baby Foods contain perchlorate in "a prevalence that could pose risks during pregnancy and infancy."  FAC ¶¶ 98– 99.

Congressional Report concluded that "commercial baby foods [including Defendant's] contain dangerous levels of arsenic, lead, mercury, and cadmium" that "pose serious health risks to babies and toddlers."  Congressional Report 59; FAC ¶ 97.  The Congressional Report found that baby food manufacturers, including Defendant, "knowingly sell these products to unsuspecting parents, in spite of internal company standards and test results, and without any warning labeling whatsoever."  Congressional Report 59; FAC ¶ 97.

Although there are few federal regulations regarding the presence of heavy metals in baby foods, according to the Congressional Report, the FDA and the World Health Organization "have declared [heavy metals] dangerous to human health, particularly to babies and children, who are most vulnerable to their neurotoxic effects."  Congressional Report 2; FAC ¶ 119.  Exposure to heavy metals in children can cause decreases in intelligence quotient ("IQ").  Congressional Report 9.  Heavy metals accumulate in the body, and thus "the risk they pose grows over time."  FAC ¶ 124.  "[T]he effects of early exposure to heavy metals can have long-lasting impacts that may be impossible to reverse."  FAC ¶ 127.  For example, exposure to inorganic arsenic risks "respiratory, gastrointestinal, haematological, hepatic, renal, skin, neurological and immunological effects, as well as damaging effects on the central nervous system and cognitive development in children."  Congressional Report 10; FAC ¶ 132.  Likewise, exposure to lead is linked to "a range of bad health outcomes, including behavioral problems, decreased cognitive performance, delayed puberty, and reduced postnatal growth."  Congressional Report 12.  Cadmium, mercury, and

perchlorate, too, are linked to low IQ and other health risks in children.  Congressional Report 12–13; FAC ¶¶ 98–99, 162–177.

## II.    Plaintiffs and their Allegations

Plaintiffs are parents who purchased the Baby Foods for their children in the states of New York, Illinois, California, Minnesota, and Washington.  FAC ¶¶ 36–62.  Plaintiffs believed that they were purchasing and feeding their children "healthy, nutritious baby food."  FAC ¶¶ 38, 41, 44, 47, 50, 53, 56, 59, 62.  Plaintiffs were "unaware the Baby Foods contained (or had a material risk of containing) heavy metals, perchlorate, and/or other contaminants."  *Id*.  Plaintiffs relied on the packaging of the Baby Foods when making their purchasing decisions.  FAC ¶ 251.  Had Defendants disclosed the presence of heavy metals and perchlorate in the Baby Foods, its inadequate testing, or failure to test, for heavy metals or perchlorate in the Baby Foods, or that its products failed to meet internal standards, Plaintiffs "would not have purchased any of the Baby Foods, and "certainly would not have paid a premium price for them."  FAC ¶¶ 38, 41, 44, 47, 50, 53, 56, 59, 62, 251.

Plaintiffs allege that "Defendant's marketing plays on the fiercely protective parenting instincts of reasonable consumers, such as Plaintiffs" by asserting that Defendant's purpose is to "give babies their healthiest, happiest beginning by offering parents organic, thoughtfully-made food," notwithstanding the presence of heavy metals or perchlorate in its Baby Foods, as established by the Congressional Report and other sources.  FAC ¶ 104.  On its website, Defendant asserts that it "routinely test[s] both [its] ingredients and finished products to assure they are safe and healthy for baby."  FAC ¶ 108.  Defendant also states that it has "strict, self-imposed quality standards . . . to assure [its] products are safe and healthy for baby" and that it tests its products "to make sure that they meet [its] strict standards and are safe for every baby, toddler, and adult to

5

consume." FAC ¶¶ 110, 112. Defendant specifically states that "[m]anaging naturally occurring heavy metals is a core part of [its] product design, [its] ingredient qualifications processes, [its] auditing programs, and [its] continuous quality improvement initiatives." FAC ¶ 185. Defendant states that it is "dedicated to data-driven improvements across [its] foods to bring mineral and metal levels down to as low as reasonably achievable." FAC ¶ 186.

Plaintiffs allege that because of Defendant's packaging and promotional messaging, which consistently "claims, features, represents, advertises, or otherwise markets the Baby Foods as organic, nutritious, high-quality, made with superior ingredients, manufactured to high standards, and appropriate for various 'stages' of [child] development," "no reasonable consumer could expect or understand that the Baby Foods did not disclose material omissions concerning the presence or material risk of heavy metals or perchlorate." FAC ¶¶ 20, 199. "Nowhere on the Baby Foods' packaging is it disclosed that they contain (or have a material risk of containing) heavy metals, perchlorate, and/or other contaminants [the "Omissions"]." FAC ¶ 25. Defendant made the Omissions "in order to justify a premium price and attract customers," "induc[ing] and mislead[ing] reasonable consumers to purchase its Baby Foods." FAC ¶¶ 27, 116. The Omissions "wrongfully convey to consumers that Defendant's Baby Foods have certain superior quality and characteristics that they do not actually possess." FAC ¶ 210. The presence of heavy metals and perchlorate in the Baby Foods "is material information to reasonable consumers." FAC ¶ 211. Without disclosure of this information, "reasonable consumers believe the Baby Foods are organic, nutritious, high-quality, made with superior ingredients, and manufactured to high standards and are free of heavy metals, perchlorate, and/or other contaminants." FAC ¶ 240. Only Defendants

"possessed knowledge of the Omissions that it knew were material to Plaintiffs and other reasonable consumers and failed to provide the information to consumers." FAC ¶ 117.

Plaintiffs "would consider the mere presence (or material risk of the presence) of heavy metals and/or perchlorate a material fact when considering purchasing the Baby Foods." FAC ¶ 29. Because of Defendant's omissions, "Plaintiffs were injured when they paid the purchase price or a price premium for the Baby Foods that did not deliver what they promised." FAC ¶ 63. Plaintiffs "would not have paid the premium price had they known that the Baby Foods contained heavy metals and perchlorate." FAC ¶ 63. In addition, if Plaintiffs were to encounter the Baby Foods in the marketplace in the future, Plaintiffs "could not rely on the truthfulness of the [Baby Foods'] packaging, absent corrective changes." FAC ¶ 63. Some Plaintiffs "would be willing to purchase the Baby Foods in the future if [they] could be certain they do not contain (or have a material risk of containing)" heavy metals or perchlorate. FAC ¶¶ 41, 47, 50, 53, 59.

## PROCEDURAL HISTORY

Plaintiffs Nicole Stewart, Summer Apicella, and Shannon Fitzgerald (the "*Stewart* Plaintiffs") initiated this action by filing a Complaint. [ECF No. 2]. The *Stewart* Plaintiffs moved to consolidate this action with numerous related actions brought against Defendant raising similar consumer protection related claims. [ECF No. 13]. Plaintiffs in the other related actions did not oppose the motion for consolidation. [ECF Nos. 17–19]. The Court granted the motion to consolidate, ordered the filing of a Consolidated Class Action Complaint ("CCAC"), and granted Defendant leave to move to dismiss the CCAC.[4] [ECF No. 47]. The Court later administratively closed all member cases. [ECF No. 208]. Following the Court's appointment of interim lead counsel [ECF No. 150], Plaintiffs filed the CCAC invoking jurisdiction under the Class Action

---

[4] Only consumer protection cases are consolidated. Claims based on similar factual allegations but raising product liability or other claims are *not* part of this consolidated case. [ECF No. 47 at ¶¶ 2-3].

Fairness Act of 2005, 28 U.S.C. § 1332(d)(2) ("CAFA"). [ECF No. 157 ("CCAC")]. Thereafter, Defendant moved to dismiss the CCAC and briefing followed. [ECF Nos. 163, 164–165, 173, 182]. Following briefing on the motion to dismiss, the parties filed several notices of supplemental authority and letters therewith. [ECF Nos. 189–196, 199, 202–203, 206].

The Court found that the CCAC did not sufficiently allege CAFA subject matter jurisdiction but denied without prejudice the motion to dismiss and issued an order to show cause why this case should not be dismissed for lack of federal subject matter jurisdiction, giving Plaintiff leave to file an amended complaint curing the deficient jurisdictional allegations. [ECF Nos. 207 & 209].

Plaintiffs thereafter filed the Amended Consolidated Class Action Complaint ("FAC"), individually and on behalf of all others similarly situated, and therein raised various state law claims for violations of: New York's Deceptive Acts and Practices and False Advertising Law (Counts I–II); Minnesota's Unlawful Trade Practices Act, Uniform Deceptive Trade Practices Act, False Statement in Advertisement Act, and Prevention of Consumer Fraud Act (Counts III–VI); Washington's Unfair Business Practices and Consumer Protection Act (Count VII); Illinois's Consumer Fraud and Deceptive Practices Act (Count VIII); California's Consumers Legal Remedies Act ("CLRA"), False Advertising Law ("FAL"), and Unfair Competition Law ("UCL") (Count IX–XI); fraudulent misrepresentation by omission under Illinois and Minnesota state law (Count XII); fraud by omission under state law (Count XIII); and unjust enrichment under state law (Count XIV). [ECF No. 214 ("FAC") ¶¶ 270–461].

After reviewing the parties' submissions responsive to the order to show cause and the FAC, the Court held that Plaintiffs' allegations were facially sufficient to invoke this Court's

jurisdiction under CAFA and granted Defendant leave to file a motion to dismiss the FAC. [ECF Nos. 212-13, 214, 219, 222].

Thereafter, Defendant moved to dismiss the FAC pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, filing a memorandum of law together with a declaration and numerous exhibits in support. [ECF Nos. 225, 226 ("Def. Mem."), 227]. Plaintiffs filed a memorandum of law, a declaration and exhibits in opposition to the motion to dismiss. [ECF Nos. 231 ("Pl. Opp."), 232]. Defendant filed a reply memorandum, and a declaration and exhibits in further support. [ECF Nos. 236 ("Def. Reply"), 237]. Plaintiffs and Defendant both moved for oral argument in connection with the motion to dismiss. [ECF No. 228, 233]. In connection the motion to dismiss briefing, Plaintiffs and Defendant each filed notices of supplemental authority. [ECF Nos. 238, 243, 257, 264].

The Court held oral argument on February 27, 2025. [ECF Nos. 246, 251]. During the oral argument, the Court directed the parties to submit letters regarding the effect of *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024) on the continued viability of the primary jurisdiction doctrine. [ECF No. 260 ("Tr.") at 34:8–18]. Plaintiffs and Defendant submitted letters accordingly. [ECF Nos. 258 ("Pl. Ltr."), 259 ("Def. Ltr.").

## LEGAL STANDARD

### I. Rule 12(b)(1): Lack of Standing

Under Federal Rule of Civil Procedure 12(b)(1), a claim must be dismissed for lack of subject matter jurisdiction "when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). Article III of the Constitution makes clear that a district court has power to adjudicate only live "Cases" or "Controversies." *See Green Haven Prison Preparative Meeting of Religious Soc'y of Friends v.*

*New York State Dep't of Corr. & Cmty. Supervision*, 16 F.4th 67, 78 (2d Cir. 2021) (quoting *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., Div. of Ace Young Inc.*, 109 F.3d 105, 108 (2d Cir. 1997)).  That means that a plaintiff must "allege facts that affirmatively and plausibly suggest that it has standing to sue." *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011).  To establish standing, a "plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).  An injury in fact must be "'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 339 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)).

A plaintiff bears the burden of establishing its standing by a preponderance of the evidence. *See Makarova*, 201 F.3d at 113. "In assessing the plaintiff's assertion of standing, '[courts] accept as true all material allegations of the complaint[ ] and . . . construe the complaint in favor of the complaining party.'" *Cortlandt St. Recovery*, 790 F.3d at 417 (quoting *W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*, 549 F.3d 100, 106 (2d Cir. 2008)). But courts may also consider evidence outside of the pleadings in assessing a Rule 12(b)(1) motion. *Cortlandt St. Recovery*, 790 F.3d at 417; *Makarova*, 201 F.3d at 113; *M.E.S., Inc. v. Snell*, 712 F.3d 666, 671 (2d Cir. 2013) ("[U]nder Rule 12(b)(1), [the court is] permitted to rely on non-conclusory, non-hearsay statements outside the pleadings." (citation omitted)).

## II.    Primary Jurisdiction

"The doctrine of primary jurisdiction allows a federal court to refer a matter extending beyond the 'conventional experiences of judges' or 'falling within the realm of administrative discretion' to an administrative agency with more specialized experience, expertise, and insight." *Nat'l Commc'ns Ass'n, Inc. v. American Tel. & Tel. Co.*, 46 F.3d 220, 222–23 (2d Cir. 1995)

(quoting *Far East Conference v. United States*, 342 U.S. 570, 574 (1952)).  "Despite its name, the doctrine [of primary jurisdiction] is not jurisdictional." *Canale v. Colgate-Palmolive Co.*, 258 F. Supp. 3d 312, 324 (S.D.N.Y. 2017) (citing *Balt. & Ohio Chi. Terminal R. Co. v. Wis. Cent. Ltd.*, 154 F.3d 404, 411 (7th Cir. 1998) (the doctrine "presupposes that the court . . . has jurisdiction"). In fact, "[p]rimary jurisdiction is a discretionary doctrine[.]'" *Bauman v. Mount Sinai Hosp.*, 452 F. Supp. 2d 490, 499 (S.D.N.Y. 2006); *see also Ellis v. Trib. Television Co.*, 443 F.3d 71, 91 (2d Cir. 2006) ("[W]e by no means suggest that primary jurisdiction is mandatory whenever the jurisdictions of a court and agency overlap.").

Courts in the Second Circuit consider the following factors in applying the primary jurisdiction doctrine: "(1) whether the question at issue is within the conventional experience of judges or whether it involves technical or policy considerations within the agency's particular field of expertise; (2) whether the question at issue is particularly within the agency's discretion; (3) whether there exists a substantial danger of inconsistent rulings; and (4) whether a prior application to the agency has been made." *Ellis*, 443 F.3d at 82–83.

### III.    Rule 12(b)(6): Failure to State a Claim

To survive a motion to dismiss pursuant to Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible if the complaint contains sufficient "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).  Although the Court "must accept as true all of the allegations contained in a complaint," this "tenet . . . is inapplicable to legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*  "[O]n a motion to dismiss, a court may consider

documents attached to the complaint as an exhibit or incorporated in it by reference," "matters of which judicial notice may be taken," and "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002) (internal quotation marks omitted) (quoting *Brass v. American Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993)).

## DISCUSSION

Defendant argues that the FAC must be dismissed because (1) Plaintiffs do not plausibly plead injury sufficient to (a) allege standing and to (b) state a claim upon which relief can be granted; (2) the primary jurisdiction doctrine mandates dismissal of Plaintiffs' claims in deference to the FDA; (3) Plaintiffs' claims are preempted by federal law; (4) Plaintiffs' omission-based claims fail to state a claim upon which relief can be granted; (5) Plaintiffs' unjust enrichment claim fails to state a claim upon which relief can be granted; (6) certain of Plaintiffs' other claims fail for state-specific reasons. *See* Def. Mem. 10–40. The Court first addresses Defendant's jurisdictional arguments, and then addresses Defendant's claim-specific arguments.

### I.    Plaintiffs Adequately Allege Standing

Plaintiffs adequately allege that they suffered an "injury in fact . . . that is fairly traceable to the challenged conduct of the defendant." *See Spokeo, Inc.*, 578 U.S. at 338. First, the Court finds that Plaintiffs allege an injury in fact. Plaintiffs do not allege physical injury as a result of their children consuming the Baby Foods. *See* Pl. Opp. 5, 9-10.[5] Rather, Plaintiffs allege that they suffered injury because they "paid for products they would not have purchased, or for which they

---

[5] During oral argument, Defendant conceded that Plaintiffs employ an economic injury theory, rather than a theory of physical harm to their children who have ingested Defendant's baby food. Tr. 6:07–17. As noted, *see supra* n.4, and as both parties acknowledge during oral argument, *see* Tr. 6:07–14, 22:19–23:05, personal injury claims are not in this consolidated class action and are the subject of separate lawsuits. Nevertheless, Defendant spends a significant part of its memorandum arguing that Plaintiffs fail to establish such physical harm. Def. Mem. at 8-9, 16-18. The Court need not address this argument.

would not have paid a premium, had [Defendant] disclosed the Omissions." Pl. Opp. 4; *see* FAC ¶¶ 27, 32, 63, 251.

"For standing purposes, a loss of even a small amount of money is ordinarily an 'injury.'" *Czyzewski v. Jevic Holding Corp.*, 580 U.S. 451, 464 (2017). In the Second Circuit, it is well-established that "overpaying for a product results in a financial loss constituting a particularized and concrete injury in fact" for purposes of Article III standing. *See John v. Whole Foods Mkt. Grp., Inc.*, 858 F.3d 732, 736 (2d Cir. 2017); *see Fishon v. Peloton Interactive, Inc.*, 620 F. Supp. 3d 80, 92 (S.D.N.Y. 2022). Likewise, "[c]ourts in this Circuit have consistently ruled that plaintiffs satisfy the requirements of Article III standing when they plead that defendants' misrepresentations caused them to purchase a product that they otherwise would not have purchased." *Wiggins v. Unilever United States, Inc.*, No. 21 CIV. 1964 (PGG), 2023 WL 7005147, at *6 (S.D.N.Y. July 26, 2023) (citing *Morrow v. Ann Inc.*, 2017 WL 363001, at *3 (S.D.N.Y. Jan. 24, 2017) and citing *Brown v. Kerry Inc.*, 2021 WL 5446007, at *3 (S.D.N.Y. Nov. 22, 2021), *report and recommendation adopted*, 2022 WL 669880 (S.D.N.Y. Mar. 7, 2022) and citing *Colpitts v. Blue Diamond Growers*, 527 F. Supp. 3d 562, 575 (S.D.N.Y. 2021) and citing *Borenkoff v. Buffalo Wild Wings, Inc.*, 2018 WL 502680, at *4 (S.D.N.Y. Jan. 19, 2018)). To establish standing, a plaintiff must allege a "plausible basis to conclude that" he or she overpaid for, or would not have purchased, the product in question. *John*, 858 F.3d at 736; *see Brownell v. Starbucks Coffee Co.*, No. 522CV1199FJSATB, 2023 WL 4489494, at *3 (N.D.N.Y. July 12, 2023).

Here, Plaintiffs plausibly plead that the Baby Foods they purchased and their children consumed contained heavy metals and perchlorate. Defendant argues that Plaintiffs did not do so because Plaintiffs did not test their own purchases and they did not "meaningfully link" testing

results to their purchased products by showing that the existence of heavy metals in Baby Food was "widespread, systematic, routine, or uniform." Def. Mem. 11–16 (quoting *Onaka v. Shiseido Ams. Corp.*, 2024 WL 1177976, at *2 (S.D.N.Y. Mar. 19, 2024) (plaintiffs asserting economic injury claims based on contamination of purchased products must "allege plausibly" that the products they purchased were contaminated) and quoting *Kell v. Lily's Sweets, LLC*, No. 23 CIV. 0147 (VM), 2024 WL 1116651 (S.D.N.Y. Mar. 13, 2024)).   In fact, Plaintiffs have alleged that heavy metals were found throughout the Baby Foods sufficient to plausibly allege that they purchased products containing such heavy metals.  *See* FAC ¶¶ 86–87, 93, 119–77; *see also Kell*, 2024 WL 1116651, at *5 (citing *John v. Whole Foods Mkt. Grp., Inc.*, 858 F.3d 732, 736 (2d Cir. 2017) ("At the pleading stage, *John* permits a court to infer that the plaintiff purchased a specific product with a defect that had been plausibly reported by third-party tests to be widespread, systematic, routine, or uniform.").  Plaintiffs allege that the Baby Foods were tested by Defendant itself and found to contain heavy metals.  FAC ¶ 86.  Further, Defendant allegedly "sold all products tested, regardless of how much toxic heavy metal the baby food contained." Congressional Report 4; FAC ¶¶ 87, 93.  The Congressional Report found that "Nurture routinely sold products that exceeded its internal standards" and internal testing found high percentages of products contained heavy metals. Congressional Report 14; FAC ¶¶ 86, 144–45.  Moreover, Plaintiffs allege that they  would consider even the "material risk of the presence[] of heavy metals and/or perchlorate" to be a "material fact" when purchasing baby food.  FAC ¶¶ 20, 29.

Plaintiffs allege that they "were injured when they paid the purchase price or a price premium for the Baby Foods that did not deliver what they promise," and that Plaintiffs "would not have paid the premium price had they known that the Baby Foods contained heavy metals and perchlorate."  *See, e.g.*, FAC ¶ 63.  Further, Plaintiffs allege that "[h]ad they known Defendant

omitted and failed to disclose the presence of heavy metals and perchlorate on its packaging, they would not have purchased the Baby Foods and certainly would not have paid a premium price for them."  FAC ¶ 251; *see* FAC ¶¶ 38, 41, 44, 47, 50, 53, 56, 59, 62.  These allegations suffice to plead injury in fact under the case law in this Circuit.  *See Hardy v. Ole Mexican Foods, Inc.*, No. 22-1805, 2023 WL 3577867, at *1 (2d Cir. May 22, 2023) ("[Plaintiff] suffered a cognizable injury [establishing Article III standing] when he paid a price premium for a La Banderita product that he otherwise would not have purchased had he known it was not made in Mexico."); *Colpitts*, 527 F. Supp. 3d at 575 ("[A]n allegation that a plaintiff would not have purchased a product or would not have paid the same amount comfortably satisfies the injury-in-fact prong of Article III standing."); *Duchimaza v. Niagara Bottling, LLC*, 619 F. Supp. 3d 395, 409 (S.D.N.Y. 2022) (allegation that plaintiff paid a "price premium" for allegedly misleadingly advertised product "is sufficient to plead an injury in fact"); *Morrow v. Ann Inc.*, No. 16-CV-3340 (JPO), 2017 WL 363001, at *3 (S.D.N.Y. Jan. 24, 2017) ("[W]hen, as here, Plaintiffs contend that class members paid more for [a product] than they otherwise would have paid, or bought it when they otherwise would not have done so they have suffered an Article III injury in fact.") (internal quotation marks omitted); *In re Hain Celestial Heavy Metals Baby Food Litig.*, No. 21-CV-00678 (NRM) (AYS), 2024 WL 5239510, at *8 (E.D.N.Y. Dec. 27, 2024) ("Plaintiffs have adequately pled a 'price premium' theory. They assert that if they knew the information set forth in the Amended Complaint about the elevated levels of heavy metals in Hain's baby food products, they would have paid less for those products or not purchased them at all.").

Defendant relies primarily on out-of-circuit decisions regarding similar claims brought against other baby food manufacturers that have found that plaintiffs lack standing under similar theories of economic harm.  *See* Def. Mem. 18–19  (citing *In re Plum Baby Food Litig.*, 637 F.

Supp. 3d 210 (D.N.J. 2022) (*Plum I*); *In re Gerber Prod. Co. Heavy Metals Baby Food Litig.*, No. 1:21-cv-269 (MSN/JFA), 2022 WL 10197651 (E.D. Va. Oct. 17, 2022); *Kimca v. Sprout Foods, Inc.*, No. CV 21-12977 (SRC), 2022 WL 1213488, at *8 (D.N.J. Apr. 25, 2022); *Kimca v. Sprout Foods, Inc.*, No. BER-L-2538-22, 2022 WL 3586095, at *2 (N.J. Super. Ct. Law Div. Aug. 05, 2022). However, these decisions all rely on Third Circuit precedent that applies a more stringent standard to analyzing the type of economic harm that Plaintiffs allege here. *See Kimca*, 2022 WL 1213488, at *8 (citing *In re Johnson & Johnson Talcum Powder Prods. Mktg., Sales Practice & Liability Litig.*, 903 F.3d 278 (3d Cir. 2018) and identifying the "three avenues" for pleading economic injury in the Third Circuit). Under Third Circuit precedent, for example, to allege a premium price theory of economic harm, a plaintiff must allege "that the defendant unlawfully advertised its product as being '*superior*' to others." *Johnson & Johnson*, 903 F.3d at 283 (emphasis added). A plaintiff may also allege that "absent the defendant's conduct, she would have purchased an *alternative product* that was less expensive." *Id.* at 282 (emphasis added). Finally, "a plaintiff might successfully plead an economic injury by alleging that she bargained for a product worth a given value but received a product worth less than that value." *Id.* at 283.

Plaintiffs here arguably might satisfy the more stringent standard that governs in the Third Circuit. But, the Second Circuit has not adopted these stricter standards, and, in this Circuit, more generalized allegations that a plaintiff "purchased products bearing allegedly misleading labels" and therefore "sustained financial injury" regularly suffice to plead injury in fact. *See Axon v. Florida's Nat. Growers, Inc.*, 813 F. App'x 701, 704 (2d Cir. 2020); *John*, 858 F.3d at 736 (2d Cir. 2017); *Levy v. Hu Prod. LLC*, No. 23 CIV. 1381 (AT), 2024 WL 897495, at *4 (S.D.N.Y. Mar. 1, 2024); *Wiggins*, 2023 WL 7005147, at *6; *Colpitts*, 527 F. Supp. 3d at 575 (plead injury

in fact when Plaintiff "would not have purchased a product or would not have paid the same amount").[6]  Accordingly, the Court finds that Plaintiffs plausibly plead injury in fact.

Next, Plaintiffs adequately argue that the economic injury they allege is "fairly traceable" to Defendant's omissions. *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).  Defendant argues that Plaintiffs' injuries are not traceable to its alleged omissions because "almost all" Plaintiffs allegedly continued to make purchases after the fact of the presence of heavy metals and perchlorate in the Baby Foods purportedly was in the public domain.  Def. Mem. 20. Defendant asserts that this public knowledge contradicts Plaintiffs' allegation that they would not have purchased Baby Foods absent Nurture's alleged omissions.  *Id.*; Def. Reply 20. Defendant cites to two distinguishable cases to support this contention. First, *Ross v. AXA Equitable Life Insurance Co.*, 680 F. App'x 41, 45 (2d Cir. 2017), the Second Circuit case Defendant cites, affirmed the dismissal of a case in which Plaintiffs failed to allege at all that they would not have purchased an insurance policy absent a misleading statement, thus failing to allege traceability.  *See* Def. Mem. 20.  Here, Plaintiffs do allege that they would not have made their purchases absent the omissions. *See, e.g.*, FAC ¶¶ 38–63. Next, Defendant cites a Second Circuit case, *Paradowski v. Champion Petfoods USA, Inc.*, No. 22-962-CV, 2023 WL 3829559, at *2–*3 (2d Cir. June 6, 2023), finding on summary judgment that public knowledge regarding heavy metals in pet food meant that Defendant did not have a duty to disclose such information.  *See* Def. Reply 20. "In that case, however, the Circuit had the benefit of a developed 'factual record establish[ing] that a reasonable consumer could have discovered that Champion's pet foods had a material risk of containing some

---

[6] Defendant submitted as supplemental authority the recently filed opinion in *In re: Beech-Nut Nutrition Co. Baby Food Litig.*, 2025 WL 862382 (N.D.N.Y. Mar. 19, 2025), which applies the Third Circuit standard for economic injury, relying on Third Circuit cases, and finds plaintiffs fail to allege an economic injury.  This case is not binding on the Court and the standard it sets out is in conflict with Second Circuit precedent, as explained above. *See, e.g.*, *Axon*, 813 F. App'x at 704; *In re Hain Celestial*, 2024 WL 5239510, at *8.

measurable amount of heavy metals.'" *In re Lindt & Sprungli (USA), Inc., Dark Chocolate Litig.*, No. 23-CV-1186 (AMD) (JAM), 2024 WL 4107244, at *6 (E.D.N.Y. Sept. 6, 2024) (declining to rely on *Paradowski* at the motion to dismiss stage). Here, at the motion to dismiss stage, Plaintiffs have adequately and plausibly alleged that they did not know about the heavy metals in the baby food they purchased. *See id.*; FAC ¶¶ 38, 41, 44, 47, 50, 53, 56, 59, 62 (Plaintiffs were "unaware the Baby Foods contained (or had a material risk of containing) heavy metals, perchlorate, and/or other contaminants."). In short, Plaintiffs have alleged an injury-in-fact fairly traceable to the conduct of the defendant, and thus, Plaintiffs have adequately alleged Article III standing.[7]

## II.    The FDA Does Not Have Primary Jurisdiction

Defendant argues that the FAC's claims must be dismissed under the primary jurisdiction doctrine, because the FDA is currently evaluating the action levels of heavy metals in baby foods through its Closer to Zero Plan. *See* Def. Mem. 8, 23–29.[8]  As explained above, "[t]he doctrine of primary jurisdiction allows a federal court to refer a matter extending beyond the 'conventional experiences of judges' or 'falling within the realm of administrative discretion' to an administrative agency with more specialized experience, expertise, and insight." *Nat'l Commc'ns Ass'n, Inc.*, 46 F.3d at 222–23 (quoting *Far East Conference*, 342 U.S. at 574).

"Despite its name, the doctrine [of primary jurisdiction] is not jurisdictional." *Canale*, 258 F. Supp. 3d at 324 (citing *Balt. & Ohio Chi. Terminal*, 154 F.3d at 411 (the doctrine "presupposes

---

[7] Defendant argues that Plaintiffs fail to allege standing for claims seeking injunctive relief. Def. Mem. 2021. Plaintiffs represent that they are no longer pursuing injunctive relief. Pl. Opp. 4 n.2.

[8] Defendant does not specify whether it moves to dismiss for lack of primary jurisdiction pursuant to Rule 12(b)(1) or 12(b)(6).  However, Courts in this circuit analyze primary jurisdiction under Rule 12(b)(6). *Canale*, 258 F. Supp. 3d at 325 (finding primary jurisdiction "is properly analyzed under Rule 12(b)(6)" but determining that the analysis is "sufficiently akin to a motion under Rule 12(b)(1) . . . so that consideration of documents beyond the four corners of the complaint is appropriate."); *Reid v. GMC Skin Care USA Inc.*, No. 815CV277BKSCFH, 2016 WL 403497, at *11 (N.D.N.Y. Jan. 15, 2016) (analyzing primary jurisdiction argument under Rule 12(b)(6)); *Goldemberg v. Johnson & Johnson Consumer Cos., Inc.*, 8 F. Supp.3d 467, 476 (S.D.N.Y. 2014) ("Rule 12(b)(1) concerning lack of subject matter jurisdiction is inapplicable" to application of primary jurisdiction doctrine).

that the court . . . has jurisdiction"). Moreover, as Defendant conceded during oral argument, Tr. at 16:06–09, "[p]rimary jurisdiction is a discretionary doctrine[.]'" *Bauman*, 452 F. Supp. 2d at 499; *see also Ellis*, 443 F.3d at 9 ("[W]e by no means suggest that primary jurisdiction is mandatory whenever the jurisdictions of a court and agency overlap."). Further, the continued viability of the doctrine may be in question after the Supreme Court decision in *Loper Bright*. *See* 603 U.S. 369 (2024). *Loper Bright* overruled the *Chevron* doctrine that at times required courts to defer to "permissible" statutory interpretations by agencies based on their "subject matter expertise." *See Loper*, 603 U.S. at 379–80, 401 (overruling *Chevron U. S. A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984)). The doctrine of primary jurisdiction, which similarly allows courts to defer to agencies' expertise may be inconsistent with the reasoning of *Loper Bright*. *See* Pl. Ltr at 1 (citing *Taylor v. JBS Foods USA,* No. 3:23-CV-03031-ECS, 2025 WL 102450, at *20 (D.S.D. Jan. 15, 2025) (noting that after *Loper Bright*, courts may be more reluctant to invoke primary jurisdiction)); *see also Inst. for Fisheries Res. v. Cont'l Tire the Americas, LLC*, No. 3:23-CV-05748-JD, 2024 WL 3381032, at *3 (N.D. Cal. July 10, 2024) (declining to apply the primary jurisdiction doctrine and noting that "there will likely be a lot to fight about over [the EPA's pending rulemaking] in this case, especially in light of the overruling of *Chevron* deference to agency decisionmaking."). As Defendant acknowledged at oral argument, there have been no binding opinions from the Second Circuit analyzing the impact of *Loper Bright* on the primary jurisdiction doctrine. Tr. at 18: 11–19. Nevertheless, the Court analyzes the primary jurisdiction doctrine as courts in this Circuit have continued to do after the *Loper Bright* decision. *See* Def. Ltr. at 2. (citing *Mezu-Ndubuisi v. Univ. of Rochester*, 2025 WL 36070, at *14-19 (W.D.N.Y. Jan. 6, 2025) and citing *New Horizon Surgical Center, LLC v. Liberty Mut. Ins. Co.*, 2024 WL 4242210, at *2 (E.D.N.Y. Sept. 19, 2024) and citing *Sohrawardy v.*

*Northwell Health, Inc.*, 2024 WL 3898307, at *3-4 (S.D.N.Y. Aug. 22, 2024) and citing *Surgicore Surgical Ctr., LLC v. Liberty Mut. Ins. Co.*, No. 23-CV-7462, 2024 WL 3835149, at *6–9 (E.D.N.Y. Aug. 15, 2024)).

Courts in the Second Circuit consider the following factors in applying the primary jurisdiction doctrine: "(1) whether the question at issue is within the conventional experience of judges or whether it involves technical or policy considerations within the agency's particular field of expertise; (2) whether the question at issue is particularly within the agency's discretion; (3) whether there exists a substantial danger of inconsistent rulings; and (4) whether a prior application to the agency has been made." *Ellis*, 443 F.3d at 82–83.

In *White v. Beech-Nut Nutrition Co.*, No. 23-220-CV, 2024 WL 194699 (2d Cir. Jan. 18, 2024), the Second Circuit vacated a decision of the Northern District of New York that had dismissed, under the primary jurisdiction doctrine in deference to the FDA, similar claims brought against a baby food manufacturer. *Id.* at *1. The Second Circuit held that it "need not weigh the *Ellis* factors because . . . any advantages of deferring to the FDA under the primary jurisdiction doctrine are outweighed by the potential costs resulting from the delay in administrative proceedings." *Id.* at *2. Although, at the time of the district court's decision, the FDA had planned to "by April 2024, . . . finalize action levels for lead and propose action levels for arsenic, with cadmium and mercury consideration and decisions to follow," that timeline has since been abandoned, and the FDA has delayed proposing action levels and "provided no timelines for when it expects to *finalize* action levels." *Id.* (internal quotation marks omitted). The Second Circuit found that in these circumstances "deferring to the FDA would unnecessarily prolong this case, likely for upwards of several years" and concluded "that the potential costs resulting from these indefinite delays outweigh any possible benefits that could be obtained from deferring to the

agency." *Id.* (cleaned up).  Since then, as the parties agreed at oral argument, the FDA has issued

final action levels for lead in processed baby food but the target date for the issuance of final action

levels for cadmium and arsenic has been delayed until "one year after issuing draft guidance."  Tr.

19:11–13, 35:5–11; *see also Closer to Zero: Reducing Childhood Exposure to Contaminants from

Food*,  FDA,  https://www.fda.gov/food/environmental-contaminants-food/closer-zero-reducing-

childhood-exposure-contaminants-foods (last visited March 23, 2025).[9]  In light of the timeframe

anticipated for FDA action, the Court here has concerns about the risk of of attendant costs and

delays that might result from deferring to FDA action.  Accordingly, the Court, in its discretion,

will not dismiss Plaintiffs' claims pursuant to the primary jurisdiction doctrine.

### III.    Plaintiffs' Claims Are Not Preempted By Federal Law

Defendant next argues that Plaintiffs' claims are preempted by federal law, because they

"directly conflict with the FDA's role under federal law to establish a uniform, national policy for

food safety, including regulation of trace elements in the food supply."  Def. Mem. 30.  The

doctrine of conflict preemption applies when "state law directly conflicts with the structure and

purpose of a federal statute."  *In re Methyl Tertiary Butyl Ether (MTBE) Prod. Liab. Litig.*, 725

F.3d 65, 97 (2d Cir. 2013).  In such circumstances, the court "may conclude that Congress intended

to preempt the state law."  *Id.*  However, a court "will find a conflict with preemptive effect only

in two circumstances: first, when 'compliance with both federal and state regulations is a physical

impossibility,' and second, when the state law 'stands as an obstacle to the accomplishment and

execution of the full purposes and objectives of Congress.'"  *Id.* (quoting *Arizona v. United States*,

567 U.S. 387, 399 (2012)).

---

[9] The Court may consider materials outside of the pleadings when analyzing subject matter jurisdiction. *See Canale*, 258 F. Supp. 3d at 325 (finding primary jurisdiction "is properly analyzed under Rule 12(b)(6)" but determining that the analysis is "sufficiently akin to a motion under Rule 12(b)(1) . . . so that consideration of documents beyond the four corners of the complaint is appropriate."); *M.E.S., Inc. v. Snell*, 712 F.3d 666, 671 (2d Cir. 2013).

Plaintiffs' claims are not preempted by federal law, because Defendant "fails to articulate any specific federal law or regulation with which plaintiffs' state law claims purportedly conflict." *In re Plum Baby Food Litig.*, No. 4:21-CV-913-YGR, 2022 WL 16640802, at *1 (N.D. Cal. Jan. 12, 2022) (*Plum II*), *reconsideration denied*, No. 4:21-CV-00913-YGR, 2023 WL 3493319 (N.D. Cal. May 3, 2023).  Defendant merely argues that the FDA has a generic "food safety role," and that the Federal Food, Drug, and Cosmetic Act ("FDCA") "authorizes the FDA to determine appropriate national standards for food safety and labeling," including "tolerance and action levels for harmful substances and ensuring accurate labels."  Def. Mem. 31.  While the Court does not dispute the accuracy of Defendant's statement as to the authority of the FDA, as the Second Circuit acknowledged in *Beech-Nut*, the FDA has *not* proposed, much less *finalized*, action levels for the presence of heavy metals, other than lead, or perchlorate in baby food products, and has not provided a timeline as to when it will do so.  *See Beech-Nut*, 2024 WL 194699, at *2.  In the absence of such finalized regulations, the FDA statements, advisory opinions, or non-binding guidance upon which Defendant relies, *see* Def. Mem. 30–31; Def. Reply 17, are not entitled to preemptive effect.  *Koenig v. Boulder Brands, Inc.*, 995 F. Supp. 2d 274, 285 (S.D.N.Y. 2014); *see In re Frito-Lay N. America, Inc. All Nat. Litig.*, No. 12-MD-2413 RRM RLM, 2013 WL 4647512, at *10 (E.D.N.Y. Aug. 29, 2013) (FDA's "non-binding guidance on the meaning of the term 'natural' . . . is not entitled to preemptive effect"); *Porrazzo v. Bumble Bee Foods, LLC*, 822 F. Supp. 2d 406, 411–13 (S.D.N.Y. 2011) (documents issued by the FDA did not create a "pervasive federal regulatory scheme" regarding permissible mercury content in canned tuna sufficient to preempt state law).  Plaintiffs' state law claims are not preempted by federal law.

**IV.    Plaintiffs Adequately Plead Injury as to Each of Their Claims**

Defendant argues under Rule 12(b)(6) that Plaintiffs fail to state any claim upon which relief can be granted because they fail to plead injury, an essential element of each of Plaintiffs' claims. *See* Def. Mem. 21–23 & n.11.  To plead injury under New York General Business Law Sections 349 and 350, Plaintiffs must allege that "on account of a materially misleading practice, [they] purchased a product and did not receive the full value of [their] purchase." *Orlander v. Staples, Inc.*, 802 F.3d 289, 302 (2d Cir. 2015); *see also Small v. Lorillard Tobacco Co.*, 94 N.Y.2d 43, 56 n.5, 720 N.E.2d 892, 898 n.5 (1999); *Cox v. Microsoft Corp.*, 10 Misc. 3d 1055(A), 809 N.Y.S.2d 480 (N.Y. Sup. Ct. 2005).  Such allegations may include "price premium" allegations that "plaintiffs paid more than they would have for the good but for the deceptive practices of the defendant-sellers." *Id.*; *accord Eidelman v. Sun Prod. Corp.*, No. 21-1046-CV, 2022 WL 1929250, at *1 (2d Cir. June 6, 2022); *Axon*, 813 F. App'x at 704.  However, a "failure to identify the prices of competing products to establish the premium" is not fatal to Plaintiffs' claims at this stage. *Axon*, 813 F. App'x at 704.

The California, Illinois, Washington, and Minnesota statutes under which Plaintiffs bring their claims require substantially similar allegations.  *See Reid v. Johnson & Johnson*, 780 F.3d 952, 958 (9th Cir. 2015) (California claims); *Kim v. Carter's Inc.*, 598 F.3d 362, 365 (7th Cir. 2010) (citing *Mulligan v. QVC, Inc.,* 382 Ill. App. 3d 620, 321 Ill. Dec. 257, 888 N.E.2d 1190, 1197 (2008)) (Illinois claim); *Nemykina v. Old Navy, LLC*, 461 F. Supp. 3d 1054, 1059–61 (W.D. Wash. 2020) (Washington claim); *Panag v. Farmers Ins. Co. of Wash.*, 166 Wash. 2d 27, 57, 204 P.3d 885, 899 (2009) (Washington claim); *Laughlin v. Target Corp.*, No. CIV. 12-489 JNE/JSM, 2012 WL 3065551, at *3–*5 (D. Minn. July 27, 2012) (Minnesota claims); *Wiegand v. Walser*

*Auto. Groups, Inc.*, 683 N.W.2d 807, 812 (Minn. 2004) (Minnesota Consumer Fraud Act claim);

*State by Humphrey v. Philip Morris Inc.*, 551 N.W.2d 490, 496 (Minn. 1996) (Minnesota claims).

Plaintiffs' common law fraud and unjust enrichment claims, too, require allegations of

pecuniary injury. *See, e.g.*, *Briarpatch Ltd., L.P v. Phoenix Pictures, Inc.*, 373 F.3d 296, 306 (2d

Cir. 2004) (unjust enrichment); *Specialized Tours, Inc. v. Hagen*, 392 N.W.2d 520, 532 (Minn.

1986) (common law fraud); *Bauer v. Giannis*, 359 Ill. App. 3d 897, 902, 834 N.E.2d 952, 957 (Ill.

App. Ct. 2005) (common law fraud); *In re Gen. Motors LLC Ignition Switch Litig.*, 257 F. Supp.

3d 372, 432 (S.D.N.Y. 2017), *modified on other grounds on reconsideration*, No. 14-MC-2543

(JMF), 2017 WL 3443623 (S.D.N.Y. Aug. 9, 2017) (common law fraud).

Plaintiffs allege that they "would consider the mere presence (or material risk of the

presence) of heavy metals and/or perchlorate a material fact when considering purchasing the Baby

Foods," and that "no reasonable consumer could expect or understand that the Baby Foods did not

disclose material omissions concerning the presence or material risk of heavy metals or

perchlorate." FAC ¶¶ 20, 29. Plaintiffs further allege that had Defendant disclosed the presence

(or the material risk of the presence) of heavy metals or perchlorate in the Baby Foods, Plaintiffs

themselves, not just a reasonable consumer, "would not have purchased any of the Baby Foods,"

and "certainly would not have paid a premium price for them." FAC ¶¶ 38, 41, 44, 47, 50, 53, 56,

59, 62, 251. Accordingly, Plaintiffs allege that because of Defendant's omissions, "Plaintiffs were

injured when they paid the purchase price or a price premium for the Baby Foods that did not

deliver what they promised." FAC ¶ 63.

These allegations suffice to plead the requisite element of injury under the applicable

statutory law and common law. *See Orlander*, 802 F.3d at 301 (in bringing a New York GBL

claim, a plaintiff alleged that he would not have purchased defendant's product had he known of

misleading practice); *Axon*, 813 F. App'x at 704 (in support of a New York GBL claim, a plaintiff's allegation that "the price of the product was inflated as a result of defendant's deception" satisfied injury requirement); *Reid*, 780 F.3d at 958 (plaintiff stated CLRA, UCL, and FAL claims when he "alleged that he would not have been willing to pay as much as he did for [defendant's product], if anything, if he had not been misled by [defendant's] misrepresentations about [the product's] health effects"); *Nemykina*, 461 F. Supp. 3d at 1061 (relating to a Washington CPA claim, plaintiff "plainly alleges her injury . . . [that defendant's] advertising harmed [her] by causing her to pay more than she otherwise would have paid and to buy more than she otherwise would have bought"); *Laughlin*, 2012 WL 3065551, at *5 (allegations that plaintiff "would not have purchased the [defendant's] footwear had she known that the shoes did not provide the advertised benefits, [and] that she paid an increased price for the shoes" were sufficient to allege injury for Minnesota statutory claims); *Lipton v. Chattem, Inc.*, No. 11 C 2952, 2012 WL 1192083, at *5 (N.D. Ill. Apr. 10, 2012) (allegations that plaintiff "was injured because she purchased a product that was worth less than she paid for it . . . are sufficient to plead actual damages under Illinois law" regarding statutory claims); *In re Gen. Motors LLC Ignition Switch Litig.*, 257 F. Supp. 3d at 432 (holding New York courts have "routinely permitted" common law fraud claims for economic loss "to proceed" passed a motion to dismiss and finding plaintiffs plead a sufficient injury for a fraudulent concealment claim under New York Law where "they assert that they would not have purchased, or paid as much for, their vehicles had they known about the alleged defects"); *Miller v. William Chevrolet/GEO, Inc.*, 326 Ill. App. 3d 642, 653, 762 N.E.2d 1, 10 (2001*), as modified on denial of reh'g* (Ill. App. Ct. Nov. 27, 2001) ("Illinois courts have generally allowed [common law fraud] claims based on diminished value of a product . . . provided the product contains a manifested defect or current condition affecting value."); *Fladeboe v. Am. Isuzu Motors Inc.*, 150 Cal. App.

4th 42, 66, 58 Cal. Rptr. 3d 225, 243 (Cal. Ct. App. 2007), *as modified* (Apr. 24, 2007) (under California law, plaintiffs adequately plead injury related to a common law fraud claim when a fraudulent omission caused the plaintiff "to make payments to" Defendant resulting in damages equivalent to the "difference in actual value . . . between what the plaintiff gave and what he received"); *Carideo v. Dell, Inc.*, 706 F. Supp. 2d 1122, 1133 (W.D. Wash. 2010) (Plaintiffs stated a claim of fraudulent concealment under Washington law where they alleged that they "would not have purchased their computers at the price paid" absent Defendant's omission); *Wright v. Capella Univ., Inc.*, 378 F. Supp. 3d 760, 769 (D. Minn. 2019) ("tuition [plaintiff] lost by enrolling in a program that he otherwise would not have" absent fraud constitutes a sufficient injury for common law fraud claim under Minnesota law).

Defendant supports its argument that Plaintiffs fail to plead an injury primarily by reference to two inapposite cases involving allegedly misleading statements about charcoal toothpaste. Def. Mem. 22 (citing *Housey v. Proctor & Gamble Co.*, No. 22-888, 2022 WL 17844403 (2d Cir. Dec. 22, 2022) and citing *Bermudez v. Colgate-Palmolive Co.*, 667 F. Supp. 3d 24 (S.D.N.Y. 2023)). Both cases held that Plaintiffs failed to plausibly allege that Defendant's marketing of charcoal toothpaste was false or deceptive because "Plaintiffs' purported scientific articles do not show that Defendant's charcoal toothpastes lack the advertised benefits" and do not plausibly show that the toothpaste was "harmful." *See Housey*, 2022 WL 17844403, at *2; *Bermudez*, 667 F. Supp. 3d at 37–41 ("Courts have dismissed false advertising claims in similar circumstances where the plaintiffs chose 'to use scientific studies in an effort to raise plausible inferences,' and those studies did not support plausible claims of deception or falsity."). These cases do not support Defendant's argument, since they were dismissed for failure to establish a false or deceptive statement, not failure to allege an injury as Defendant argues here. *See Housey*, 2022 WL 17844403, at *2;

*Bermudez*, 667 F. Supp. 3d at 37–41.  Moreover, the cases are factually distinguishable because, as explained further below, the FAC does allege that heavy metals and perchlorate in baby food products had potentially harmful effects, relying on reports, including the Congressional Report, that suggest the same, and Plaintiffs do raise the plausible inference that Defendant's advertisement were deceptive.  *See, e.g.*, FAC ¶¶ 38, 41, 44, 47, 50, 53, 56, 59, 62, 87, 97, 119, 120, 124, 127, 132, 142, 174.

Defendant further supports its argument that Plaintiffs fail to plead an injury by reference to cases applying out-of-circuit precedent which dismiss similar claims brought against baby food manufacturers.  *See* Def. Mem. 22–23 & n.11; Def. Reply 10–12.  But, as the Court has explained, those cases were dismissed based on Third Circuit precedent regarding Article III standing that is inapplicable in this Circuit.  *See Plum I*, 637 F. Supp. 3d at 222–31; *Kimca*, 2022 WL 3586095, at *2.[10]  Defendant also cites *Robey v. PVH Corp*, which is also inapposite because there "the plaintiff [had] not pleaded that she received [a product that was] less than or something different from what she was promised" or "alleged any dissatisfaction with the items." 495 F. Supp. 3d 311, 320 (S.D.N.Y. 2020).  Here, Plaintiffs have alleged thoroughly that they received a product substantially different from the healthy baby food they were promised or were lead to believe they were purchasing.  FAC ¶¶ 38, 41, 44, 47, 50, 53, 56, 59, 62, 87, 93, 97, 119, 124.  Moreover, *Robey* also involves New Jersey consumer protection statutes, *see* 495 F. Supp. 3d at 320, which Plaintiffs have not raised here.  Whether Plaintiffs have adequately alleged the injury element of

---

[10] Defendant cites another out-of-circuit case finding Plaintiffs failed to allege injury to support common law fraud and California's FAL, CLRA, and UCL claims where Plaintiffs claimed high levels of sugar in food caused them physical harm. Def. Reply 11–12 (citing *Davidson v. Sprout Foods, Inc.*, 106 F.4th 842, 853 (9th Cir. 2024)). Plaintiffs allege economic, not physical harm here. *See* Pl. Opp. 5, 9-10.

27

their claims must be determined by reference to the state law under which Plaintiffs bring their claims. As discussed, Plaintiffs have plausibly alleged an injury here.

## V.    Plaintiffs Adequately Plead Their Omission-Based Claims

Defendant further argues under Rule 12(b)(6) that Plaintiffs' omission-based claims fail for several additional reasons.

First, Defendant argues that Plaintiffs have not alleged that the presence of heavy metals and perchlorate in the Baby Foods was material to a reasonable consumer, citing several cases for the proposition that the presence of low levels of trace contaminants in products is "not likely to affect consumers' decisions in purchasing the product and is thus not material." Def. Mem. 35 (quoting *Parks v. Ainsworth Pet Nutrition, LLC*, 377 F. Supp. 3d 241, 248 (S.D.N.Y. 2019)). However, Defendant ignores that the contaminants in the cited cases were *not* alleged to "have harmful, 'toxic,' or 'carcinogenic' effects." *Parks*, 377 F. Supp. 3d at 248; *see Herrington v. Johnson & Johnson Consumer Companies, Inc.*, No. C 09-1597 CW, 2010 WL 3448531, at *8 (N.D. Cal. Sept. 1, 2010). By contrast, the FAC contains numerous allegations about the potentially harmful effects of heavy metals and perchlorate in baby food products. *See, e.g.*, FAC ¶¶ 97, 119, 124, 127, 132, 174. Those allegations must be credited in analyzing a motion to dismiss. *See Koch*, 699 F.3d at 145. It follows logically from these allegations, and indeed, Plaintiffs specifically allege that the presence of heavy metals or perchlorate in the Baby Foods "is material information to reasonable consumers." FAC ¶¶ 29, 30, 67, 196, 198, 211, 216, 224, 233, 238, 240; *see Levy*, 2024 WL 897495, at *6. Accordingly, Plaintiffs have adequately alleged materiality, which is, in any event, a "factual issue[] not appropriate for resolution at this stage in the proceedings." *Plum II*, 2022 WL 16640802, at *2.

Next, Defendant argues that Plaintiffs do not plead fraudulent intent.  "In order to plead scienter" for a fraud claim, a complaint must "allege facts that give rise to a strong inference of fraudulent intent."  *In re Carter-Wallace, Inc., Sec. Litig.*, 220 F.3d 36, 39 (2d Cir. 2000) (internal quotation marks omitted).  Drawing all permissible inferences from the facts alleged in the FAC in the light most favorable to Plaintiffs, Plaintiffs have sufficiently alleged fraudulent intent.  It is not the case here that Plaintiffs simply allege that Defendant "fail[ed] to accurately identify the Product . . . when it knew its statements were not true nor accurate."  *Bynum v. Fam. Dollar Stores, Inc.*, 592 F. Supp. 3d 304, 316 (S.D.N.Y. 2022) (internal quotation marks omitted).  Rather, Plaintiffs allege that Defendant "sought to capitalize on [consumer] beliefs," *Izquierdo v. Panera Bread Co.*, 450 F. Supp. 3d 453, 466 (S.D.N.Y. 2020), regarding baby foods that are made from "high-quality organic ingredients" and meet "rigorous and uncompromising quality standards." *See, e.g.*, FAC ¶ 13–14, 18, 26–27, 74–82, 104–05.  Plaintiffs allege that "Defendant knew that reasonable parents . . . would find the presence or material risk of heavy metals and other toxins material" and "would not knowingly feed their children baby food" that contained heavy metals or other contaminants. *See* FAC ¶¶ 5, 30.  They allege that the omissions "wrongfully convey to consumers that Defendant's Baby Foods have certain superior quality and characteristics that they do not actually possess," given the presence of heavy metals and perchlorate, and that Defendant intended the omissions "to justify a premium price and attract customers," "induc[ing] and mislead[ing] reasonable consumers to purchase its Baby Foods."  FAC ¶¶ 27, 116, 210.  Plaintiffs also allege that Defendant actively concealed material facts.  FAC ¶¶ 185–86, 94; Congressional Report 35. Based on these and similar allegations in the FAC, Plaintiffs have adequately alleged fraudulent intent. *See Brass*, 987 F.2d at 152–53 (scienter was sufficiently pleaded where Plaintiff alleged that Defendant induced a purchase from Plaintiff and concealed certain information it

believed "would lessen [Plaintiff's] interest."); *Nash v. The New Sch.*, No. 05CIV.7174 (KMW)(FM), 2009 WL 1159166, at *5 (S.D.N.Y. Apr. 29, 2009) (scienter was sufficiently pleaded where Plaintiff alleged that Defendant, a drama school, concealed that its association with another company would expire "because it knew Plaintiffs were enrolling in the drama program due to their assumption [that the association] would continue.").

Next, Defendant argues that Plaintiffs fail to allege Defendant's duty to disclose sufficient to sustain their state law omission-based claims. *See* Def. Mem. 37–39. A duty to disclose arises "(1) when the defendant is in a fiduciary relationship with the plaintiff; (2) when the defendant had exclusive knowledge of material facts not known to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; [or] (4) when the defendant makes partial representations but also suppresses some material facts." *LiMandri v. Judkins*, 52 Cal. App. 4th 326, 336, 60 Cal. Rptr. 2d 539 (Cal. Ct. App. 1997); *see Song v. Champion Petfoods USA, Inc.*, No. 18-CV-3205 (PJS/KMM), 2020 WL 7624861, at *11 (D. Minn. Dec. 22, 2020) (recognizing a duty to disclose under Minnesota law "(1) when there is a confidential or fiduciary relationship between the parties; (2) when one party has 'special knowledge of material facts to which the other party does not have access'; and (3) when a party's representations would be misleading absent additional disclosures"), *aff'd*, 27 F.4th 1339 (8th Cir. 2022); *Banque Arabe et Internationale D'Investissement v. Maryland Nat. Bank*, 57 F.3d 146, 155 (2d Cir. 1995).

Plaintiffs adequately allege that Defendant had knowledge of material facts not known to Plaintiffs sufficient at the pleading stage to plausibly allege a duty to disclose. Plaintiffs allege that Defendant conducted internal testing of the Baby Foods that showed the presence of heavy metals, sold all of the Baby Foods produced regardless of the results of its testing for heavy metals, and flouted FDA and internal standards for the testing of heavy metals. *See* FAC ¶¶ 89–91, 97;

Pl. Opp. 33–35.  Much of this information only came to light as a result of the Congressional Report, of which a reasonable consumer's knowledge is a question of fact not properly resolved on a motion to dismiss.  *See, e.g.*, *Levy*, 2024 WL 897495, at *6; *Plum II*, 2022 WL 16640802, at *2; *O'Connor v. Ford Motor Co.*, 567 F. Supp. 3d 915, 965 (N.D. Ill. 2021).  Plaintiffs further allege that reasonable consumers are not in a position "to determine whether [Defendant's] products do in fact contain or have a material risk of containing" heavy metals or perchlorate.  FAC ¶ 7.

Plaintiffs also allege that Defendant actively concealed material facts and make partial representations while suppressing relevant information.  Specifically, Plaintiffs allege that Defendant promoted on its website that "[m]anaging naturally occurring heavy metals is a core part of [its] product design, [its] ingredient qualifications processes, [its] auditing programs, and [its] continuous quality improvement initiatives."  FAC ¶ 185.  The website further stated that Defendant is "dedicated to data-driven improvements across [its] foods to bring mineral and metal levels down to as low as reasonably achievable" and that "[e]ach product is tested to make sure that they meet our strict standards and are safe for every baby, toddler, and adult to consume."  FAC ¶¶ 112, 186.   However, Defendant allegedly did not disclose the that it sold all products regardless of test results, and did not disclose the actual levels of heavy metals in the Baby Foods, including, for example, that its internal standard for arsenic exceeded the standard set by the FDA.  FAC ¶¶ 89, 93, 116, 251.  The Congressional Report found that as a result Defendant "appear[ed] to have misled the Subcommittee about its testing standards," "casting serious doubt on [Defendant's] candor in this matter."  Congressional Report 35; FAC ¶ 94. These allegations support an inference that Defendant concealed material facts from Plaintiffs and consumers in general as well.

Relatedly, Defendant argues that information regarding the presence of heavy metals and perchlorate in the Baby Foods was in the public domain and as such, Plaintiffs do not adequately allege that any omission was deceptive. Def. Mem. 32–35 (citing *Paradowski*, 2023 WL 3829559, at *2). To plead a deceptive omission, a plaintiff must allege that "the information omitted was solely within the defendant's possession or that a consumer could not reasonably obtain such information." *Dimond v. Darden Restaurants, Inc.*, No. 13 CIV. 5244 KPF, 2014 WL 3377105, at *13 (S.D.N.Y. July 9, 2014) (internal quotation marks omitted) (quoting *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank,* 85 N.Y.2d 20, 26, 623 N.Y.S.2d 529, 647 N.E.2d 741 (N.Y.1995)). Defendant argues that Plaintiffs merely allege in conclusory fashion that "Defendant alone possessed the knowledge" of the presence of heavy metals and perchlorate in the Baby Foods. Def. Mem. 34 (quoting FAC ¶ 117). However, Plaintiffs also allege that they were "unaware the Baby Foods contained (or had a material risk of containing) heavy metals, perchlorate, and/or other contaminants" and that "[r]easonable consumers lack the scientific knowledge or expertise to determine whether Defendant's products do in fact contain or have a material risk of" containing heavy metals or perchlorate. FAC ¶¶ 7, 38, 41, 44, 47, 50, 53, 56, 59, 62. Plaintiffs further allege that Defendant "knows that reasonable consumers seek out and wish to purchase baby food products that are free of heavy metals, perchlorate, and/or other contaminants," and "knowingly concealed" the presence of such materials in their Baby Foods. FAC ¶¶ 30, 428, 452.

Contrary to Defendant's argument, *see* Def. Mem. 34–35, the public availability of FDA statements and other documents referenced in the FAC at this stage does not and cannot properly refute Plaintiffs' allegations of their lack of knowledge. *See Peretti v. Authentic Brands Grp. LLC*, 33 F.4th 131, 133 (2d Cir. 2022) ("For the purpose of a motion to dismiss, this court assumes all

facts alleged in the Complaint to be true and draws all reasonable inferences in favor of the plaintiff."). The Second Circuit held that at the motion to dismiss stage, omissions were deceptive though some of the omitted information may have been publicly available when the Defendant had "superior knowledge, not readily available to the other" and "knew that the plaintiff was acting under a mistaken belief with respect to a material fact." *See Brass*, 987 F.2d at 151–52. It explained further that a "buyer is not required to conduct investigations to unearth facts and defects that are present, but not manifest." *See id.*; *see also Levy*, 2024 WL 897495, at *6 (distinguishing *Paradowski*, in which "the Circuit had the benefit of a developed 'factual record'" and finding at the motion to dismiss stage that, though findings of lead in chocolate were in the public domain, Plaintiff "has alleged that a consumer could not reasonably determine how much lead the Products contained, as 'detecting these chemicals requires expensive scientific testing'"); *O'Connor*, 567 F. Supp. 3d at 965 ("[T]he Court cannot determine on the pleadings whether the [publicly filed] NHTSA complaints were 'readily available' to Plaintiffs or would have provided Plaintiffs with sufficient notice of the Defect . . . It is not apparent that the average consumer would know about [the public] NHTSA complaints, know how to access them, or know how to interpret them or their importance to the decision to purchase a Vehicle."); *Colangelo v. Champion Petfoods USA, Inc.*, No. 618CV1228LEKML, 2020 WL 777462, at *14 (N.D.N.Y. Feb. 18, 2020) ("Defendants had extensive knowledge of the BPA and heavy metals in their products, . . . and that Champion knew that consumers relied on the mistaken belief that the products did not contain BPA and heavy metals in making their purchases, . . . are sufficient to allege a duty to disclose at this stage."); *cf. Paradowski*, 2023 WL 3829559, at *2–*3 (finding, *on full record at summary judgment*, that "[t]he fact that [defendant's] pet foods contained heavy metals was information reasonably obtainable to the Plaintiff").

Similarly here, the Court cannot assume or infer on a motion to dismiss that the average consumer would know of the findings in the Congressional Report, have access to facts or scientific know-how to interpret them or apply them in their decision-making regarding purchases of Baby Foods. For this reason, Defendant's argument that some Plaintiffs continued to purchase Defendant's Baby Foods after certain information became publicly available, *see* Def. Mem. 34–35, does not, at the pleading stage, preclude Plaintiffs' omission-based claims. Moreover, certain of Plaintiffs' allegations—that Defendant inadequately tested for heavy metals and perchlorate, or that Defendant's products failed to meet its internal standards—were made public only through the February 2021 Congressional Report, which postdates the majority of Plaintiffs' purchases of the Baby Foods. *See* FAC ¶¶ 36–62.

For these reasons, Plaintiffs have adequately stated their omission-based claims at this stage.

## VI.    Plaintiffs' Unjust Enrichment Claim is Duplicative

Defendant moves to dismiss Plaintiffs' unjust enrichment claim arguing that (1) they are duplicative of Plaintiffs' other claims and (2) Plaintiffs have not shown that Nurture unjustly retained a benefit. Def. Mem. at 39. "Two claims are duplicative of one another if they arise from the same facts and do not allege distinct damages." *NetJets Aviation, Inc. v. LHC Commc'ns, LLC*, 537 F.3d 168, 175 (2d Cir. 2008). Where an "unjust enrichment claim is premised on the same factual allegations as those supporting Plaintiffs' other claims, and Plaintiffs have not alleged distinct damages with respect to [the unjust enrichment] claim . . . the Court must dismiss Plaintiffs' unjust enrichment claim as duplicative." *Cooper v. Anheuser-Busch, LLC*, 553 F. Supp. 3d 83, 115 (S.D.N.Y. 2021).

Here, Plaintiffs' unjust enrichment claim is premised on the same factual allegations as its other claims and does not plead distinct damages arising from those claims. *See* FAC ¶¶ 455–61; Def. Reply 24–25. Indeed, Plaintiffs' allegation of damages with respect to their unjust enrichment

claim is the same economic theory of damages that supports all of their other claims—that "the payments rendered by Plaintiffs were given and received with the expectation that the Baby Foods would not contain heavy metals, perchlorate, and/or other contaminants" and "Plaintiffs were injured when they paid the purchase price or a price premium for the Baby Foods that did not deliver what they promised."  FAC ¶¶ 63, 457.  Accordingly, Plaintiffs' unjust enrichment claim is dismissed.

### VII.    Plaintiffs Fail to State a Claim Under California's UCL and FAL

Defendant asserts that Plaintiffs fail to state claims under California Unfair Competition Law ("UCL") and False Advertising Law ("FAL") because Plaintiffs cannot show, as they must, that remedies at law are inadequate.   Def. Mem. 39–40 (citing *Sonner v. Premier Nutrition Corp*., 971 F.3d 834, 844 (9th Cir. 2020)).   Indeed, the UCL and FAL do not create a private right for plaintiffs to seek monetary damages; they only permit equitable relief by way of injunctive relief and restitution. *See, e.g.*, *Julian v. TTE Tech., Inc*., No. 20-CV-02857-EMC, 2020 WL 6743912, at *4 (N.D. Cal. Nov. 17, 2020); *Hambrick v. Healthcare Partners Med. Grp., Inc.*, 238 Cal. App. 4th 124, 155, 189 Cal. Rptr. 3d 31, 54 (Cal. Ct. App. 2015).  While the FAC seeks restitution and injunctive relief for both the UCL and FAL claims, *see, e.g.*, FAC ¶¶ 399–402, 413–14, the Plaintiffs' opposition to the pending motion to dismiss represents that Plaintiffs no longer seek injunctive remedies. Pl. Opp. 4. n.2.  For the remaining relief sought, Plaintiffs must establish that "[they] lack[] an adequate remedy at law before securing equitable restitution for past harm under the UCL." *See Sonner*, 971 F.3d at 844.

Plaintiffs fail to show that they lack an adequate remedy at law.  Instead, Plaintiffs argue they may assert claims for restitution as an alternative to their claims seeking damages, citing a case involving New York law.  Pl. Opp. 41 (citing *Capax Discovery, Inc. v. AEP RSD Invs., LLC*,

285 F. Supp. 3d 579, 593 (W.D.N.Y. 2018)).  Plaintiffs Lawson and Micciche and the purported California Subclass, who claim violations under the UCL and FAL and seek restitution in the form of the price paid for Baby Food, separately also seek damages under the California Consumers Legal Remedies Act and fraud claims.  FAC ¶¶ 384, 452.  Courts dismiss UCL and FAL claims where, as here, Plaintiffs fail to show how the restitution they seek differs from the damages they seek under other statutes or legal theories.  *See, e.g.*, *Sonner*, 971 F.3d at 844 (dismissing UCL claims where Plaintiff "seeks the same sum in equitable restitution as 'a full refund of the purchase price'—$32,000,000—as she requested in damages to compensate her for the same past harm"); *Julian*, 2020 WL 6743912, at *5 (dismissing FAL and UCL claims where "Plaintiffs' claim for damages and restitution are not really different").  Accordingly, Plaintiffs' UCL and FAL claims are dismissed.

## VIII.    Defendant's Additional State-Specific Arguments for Dismissal Fail

Defendant makes two additional state-specific arguments for dismissal, both of which the Court finds to be insufficient to warrant dismissal of claims at the pleading stage.

First, Defendant argues that the economic loss doctrine bars Plaintiffs' fraudulent concealment claim under California law.  "The 'economic loss rule' prohibits plaintiffs from suing in tort for damages that lie only in contract." *Lemus v. Rite Aid Corp.*, 613 F. Supp. 3d 1269, 1282 (C.D. Cal. 2022).  However, "the economic loss rule does not bar . . . fraud . . . claims" when they are independent of any breach of contract. *Robinson Helicopter Co. v. Dana Corp.*, 34 Cal. 4th 979, 991, 102 P.3d 268, 274 (2004).  That is the case here, and Plaintiffs may proceed on this claim.

Second, Defendant argues that Plaintiffs Micciche's and Paris's claims are time barred because, considering the date of those Plaintiff's purchases of the Baby Foods, their claims were

not brought within the three-year statute of limitations governing California and Washington state law claims. *See* Def. Mem. 40. Plaintiff Micciche's and Paris's claims are properly brought under the delayed discovery rule. *See Plumlee v. Pfizer, Inc.*, No. 13-CV-00414-LHK, 2014 WL 695024, at *8 (N.D. Cal. Feb. 21, 2014); *Mason v. Mason*, 19 Wash. App. 2d 803, 826, 497 P.3d 431, 445 (Wash. Ct. App. 2021). The FAC plausibly alleges that Plaintiffs, including Micciche and Paris, did not discover the Omissions until the February 2021 Congressional Report. *See, e.g.*, FAC ¶¶ 2, 51–53, 60–62. This is sufficient to state a claim at the pleading stage.

Further, Plaintiff Paris's claims are timely under the relation back doctrine, because her claims arise out of the conduct set forth in the original Complaint, there is a sufficient identity of interest between Paris and the other Plaintiffs, and Paris's respective claims such that Defendant has fair notice of Paris's claim against them and there is no undue prejudice to Defendant. *See Zorrilla v. Carlson Restaurants Inc.*, 255 F. Supp. 3d 465, 476 (S.D.N.Y. 2017); FAC ¶¶ 60–62. Defendant does not, and could not, argue here that they were unduly prejudiced by the addition of Plaintiff Paris in October 2022 when initial complaint arose from the very same conduct by the Defendant and included plaintiffs with the very same interests as Plaintiff Paris. *See* Pl. Opp. at 42; Def. Reply at 25.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is DENIED in part and GRANTED in part.

Plaintiffs have standing to assert all of their claims, the claims are not pre-empted by federal law, and the Court will not decline to hear the claims under the primary jurisdiction doctrine. Plaintiffs' unjust enrichment claim and the California statutory False Advertising Law and Unfair

Competition Law claims are DISMISSED. All other claims are legally sufficient to state a claim.

The Clerk of Court respectfully is requested to terminate the motions pending at docket entry 225.


**SO ORDERED.**

**Date:  March 26, 2025**
      **New York, NY**
                                       **MARY KAY VYSKOCIL**
                                       **United States District Judge**